NEWMAN et al. v. DAVIS.    (No. 514.)

(Court of Civil Appeals of Texas. El Paso. March 16, 1916. Rehearing Denied April 6, 1916.)

1. PUBLIC LANDS ☞175(5)—LANDS OF STATES. —PRIORITY OF LOCATION.

Where a location of public lands is fixed by actual survey upon the ground, being the first or eldest in location, the lines so fixed upon the ground control.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 565, 566; Dec. Dig. ☞175(5).]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. APPEAL AND ERROR ⬿1002 — REVIEW — VERDICT ON CONFLICTING EVIDENCE.

A verdict on conflicting evidence will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ⬿ 1002.]

Walthall, J., dissenting.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Lamar Davis against C. M. Newman and others. From a judgment for plaintiff, defendants appeal. Affirmed.

A. G. Foster, Jno. L. Dyer, and T. A. Falvey, all of El Paso, for appellants. Winter, McBroom & Scott, of El Paso, for appellee.

HARPER, C. J. Appellee filed this suit against appellants in trespass to try title to survey No. 7, Texas & Pacific Railway Company, describing same by metes and bounds. Appellants disclaimed as to all that part of No. 7 lying north or northerly of the south or southerly line of said survey by the survey and map of Hardaway; and under a description by metes and bounds of surveys 72 to 78 and 82, by cross-action, asked judgment for all of said last-named surveys. Appellees, by supplemental petition, disclaimed as to all sections named, except 77. The case was submitted to a jury upon special issues. A verdict was returned upon which judgment was entered for appellees, plaintiffs below, from which this appeal is perfected.

The parties filed an agreement in writing which contained, among other things, the following stipulation:

"It is agreed that the controversy in reference to the lands and premises herein involved is one of boundary, and the true boundary lines between the lands of plaintiffs and the defendants and the location thereof is in controversy, and that wherever the boundary line may be located that the plaintiffs will be entitled respectively to all the lands claimed by them lying northeast of such boundary lines, and that the defendants, as to the lands claimed by them, shall be entitled to the lands lying southwest of such boundary line; * * * the only issue being the location of the true boundary line and dividing line between the lands of plaintiffs and defendants."

In 1858, J. A. Tivey located by actual survey upon the ground surveys numbered 53 to 114, inclusive. Beginning at a point upon the Rio Grande, No. 53 was located upon the ground by definite corners, and then survey No. 54 was located and tied onto 53 on the southeast, and each, in turn, in their numerical order, were located in the same manner, running southeast along the Rio Grande for the southern boundary line of at least a portion of each survey. A plat of said surveys was made and filed in the General Land Office of Texas and the same were patented from time to time up to the last, about 1873.

[1] In 1870, Jacob Keuchler, deputy surveyor for the Texas & Pacific Railway Company, located surveys 1 to 11, block A, inclusive, upon the north of said Tivey surveys

beginning with east line of survey No. 57, west corner of No. 58, and then so located the south line of each as to join onto and make the north lines of the Tivey surveys the south lines of the said Texas & Pacific surveys down to and including Tivey survey No. 77, as shown by the following plat:

As will appear from the above statement, the Tivey surveys being the first or eldest in location, their north line as fixed upon the ground would control. Several resurveys have been made of said lands with a view of tracing the footsteps of Tivey in the original survey. Some of said surveyors by their maps and plats and testimony place the Tivey line, as run by him, between survey 7, Texas & Pacific, and 77; Tivey, where plaintiffs claim it to be; and others, where defendants claim it to be. Appellants contend for the line as found by and delineated upon the map of one Hardaway, surveyor appointed by the court, and appellees contend for the line of surveyor Harris' map, etc. The verdict and judgment is based upon question No. 1, which is as follows:

---

"Do you find from a preponderance of the evidence that the northern boundary line of said survey No. 77, as surveyed on the ground by J. A. Tivey, is coincident with or south of the northern boundary of said survey as located and marked by Murray Harris, and delineated on the map of the said Harris introduced in evidence? Answer: Yes."

Appellants urge by assignments 1 and 2 that the verdict and judgment for plaintiff, appellee here, is against the great weight and preponderance of the evidence and for that reason should be reversed and remanded for a new trial.

Appellants submit many propositions under these assignments which are in line with the rules of law, but the sole question for this court to determine is: From the evidence in this record favorable to appellees, could the jury, in an honest and impartial effort to arrive at the truth, have reached the conclusion expressed by their verdict? If so, then we cannot set it aside.

There are more than 300 pages of typewritten matter in the statement of facts, and appellants, under the two first assignments, urge 30 propositions. To answer them in detail by reference to the evidence in the record would extend this opinion to an unreasonable length, and, in fact, take our time to no good purpose. We have carefully read the record in respect to all of appellant's contentions, and have reached the conclusion that there is no such lack of preponderance of the evidence in favor of the appellee as to justify us in reversing this case.

To illustrate how the questions of fact raised by appellants, upon which they rely to reverse this case, are met, or offset by the evidence in favor of appellees, let us discuss what we consider the strongest or most forceful proposition urged here by them, viz.:

"That the artificial objects called for in the field notes of surveys 53 and 85 and 86 and 110½, lying in proper position, according to the field notes of all the surveys in their order, correctly show the location of all said surveys from 53 to 110½, inclusive, without dispute."

The first object relied upon is the old stage road called for in the Tivey field notes to No. 53 and survey No. 110½, as made in 1858. The contention is that the line running north and south between 52 and 53 is agreed upon, that the call for this line fixed this old road at 520 varas from the river, and that this point is practically agreed upon. Now, if this be so, and we can here hold that as a matter of fact the northwest or northeast corner of 53 is fixed by natural objects or by agreement, and that, by running the north line of the Tivey surveys on the ground from this point to points about which there is no question as to their location, the Hardaway line is established beyond question, then this case should be reversed and rendered; but what do we find in relation to the road in question and the other points claimed to be established unquestionably? We find that witnesses for both parties testify that the original stage road of 1858 has been washed away, in 1875, or at some other date fixed by witnesses. Harris, upon whose testimony and map the verdict must have been based, testified that there were several old roads in and about the same place; that the designated "old road" upon his map was not fixed. The testimony of some of the witnesses shows that they had not been upon the ground for many years, and there are other facts in evidence which justify the jury in their refusal to accept the evidence as to the exact starting point of the surveys of Tivey, as being as contended for by appellants.

[2] And the same conflict of testimony appears as to each and every one of the points in the evidence relied upon by appellants to substantiate their claim that the preponderance of the evidence is not in favor of the verdict. So we could continue on and show the conflict of evidence upon the points urged by appellants to be uncontradicted; but, in each case, we find the evidence to be equally conflicting, so we conclude that the verdict of the jury has sufficient evidence to support it.

The third assignment is:

"The court erred in rendering judgment in favor of plaintiff herein for the land sued for by plaintiff herein, because in the pleadings of plaintiff herein no reference is had or made to the map made by Murray Harris, and the findings of the jury in this case did not identify the line found by them in relation to the land sued for by the plaintiff herein, and it is impossible for the court to determine or say that the line as established by Harris covers, coincides with, or is coincident with any line of the land described in plaintiff's petition, and, in entering judgment on the findings of the jury, the court erred and assumed that the Harris land was coincident with the south line or any other line of the land called for by the plaintiff herein, and described by plaintiff in his petition, and for that reason and for such reason the judgment entered herein should be set aside and a new trial be ordered herein and the findings of the jury be disregarded."

The answer is that plaintiff sued for survey No. 7, Texas & Pacific survey, by metes and bounds, and there is sufficient evidence in the record to show that the land described by plaintiffs in their petition is the same as that incorporated within the lines between the Hardaway and Harris surveys; in other words, to prove that the lands in controversy were the lands belonging to survey No. 7, Texas & Pacific, as pleaded by appellees.

Finding no error in the record, the cause is affirmed.

WALTHALL, J. (dissenting). I do not concur in the opinion expressed by the majority members of this court in this case.

There appears to be no dispute as to the correctness of the Hardaway survey and map filed by him in his location of Tivey surveys from No. 53, down to and including survey No. 58. The conflict in the surveys involved in this suit, it seems to me, can be traced to the beginning point fixed for Texas & Pacific survey No. 1. Surveys 57 and

58 were located on the ground and patents issued for them long before any of the Texas & Pacific surveys were made. No. 58 was located according to the calls made by Tivey in his original survey of No. 57. Tays, in his resurvey of 57, began his survey of 57 at the same common river corner of 56 and 57, and called for the same natural objects. From that common point, both Tivey and Tays have the same calls for course, distance, and calls for other surveys up to where they both reached the east or northeast corner of survey No. 57. Tivey, in running his line from the northeast corner of 57 to the river for a corner, calls for a distance of 697 varas. From that river corner Tivey meandered the river to the common river corner for 56 and 57 as used by both Tivey and Tays. Survey 58 was patented on the field notes made by Tivey which tied onto 57. These two surveys were made by Tivey at the same time. In making survey 58, Tivey began at the lower river corner of 57, and ran his line for 58 on the same course (45° E.) 833 varas, thus placing the northwest corner of 58, 136 varas farther to the north than 57 was fixed by both Tivey and Tays. Tays, in making his resurvey of 57, coincides with all of the calls, courses, and distances and ties onto all of the Tivey surveys on their northern boundaries back to survey 52. There is only one difference between the resurvey of 57 made by Tays and the original survey made by Tivey. Tays makes the northeasterly stem of 57 from its northeast corner to the river 1,337 varas as against Tivey's distance of ˙697 varas; that is, gave that stump of 57 a greater length by 640 varas. Tays' resurvey was made 15 years after Tivey had located 57 on the ground. In other words, in running the northeast line of 57 fifteen years after the original survey was made, he ran 'that distance to reach the river as it then was. There was no resurvey made by Tays of 58. The relative positions of 57 and 58 are shown by the records both in the county surveyor's office and by the map of said surveys made by Tivey and filed in the land office at Austin, and by Tays' map in his resurvey of 57, both in the surveyor's office and in the land office. These surveys and maps show the northerly boundary of survey 58 to be north of north boundary of 57.

In locating Texas & Pacific survey No. 1, it calls to begin "at a stake and mound set on the east line of survey No. 57, for the west corner of 58." The field notes do not show how far below the northeast corner of survey 57 the beginning corner of Texas & Pacific survey No. 1 starts; but Mr. Harris' evidence shows it to be 640 varas. That is, the surveyor, in locating Texas & Pacific survey No. 1, pulls survey 58 down on easterly line of 57, a distance of 776 varas, and calls that point

the "west corner of survey 58." With that point as a beginning corner for Texas & Pacific survey No. 1, it would necessarily carry a conflict and cause a lapping over onto the subsequent Tivey surveys by the subsequent Texas & Pacific surveys until Texas & Pacific survey No. 7 and Tivey survey No. 77 are reached. If that view is sustained by the undisputed evidence, the Harris south line for Texas & Pacific survey 7 is too far south by 776 varas. To make the south line of Texas & Pacific survey No. 7 and the north line of Tivey survey 77 coincident, the Harris line should be further north the width of the conflict; that is, 776 varas.

I have found no authority in the evidence for the beginning corner of Texas & Pacific survey No. 1, and I am of the opinion that none can be found. The Tays resurvey of 57 in no wise changes the north boundary line of 57. It cannot be claimed that the resurvey of 57 by Tays could in any way change the original location of 58. The original locations of these surveys were accepted by the General Land Office, and the lands covered by the field notes and patents were removed from subsequent locations. The evidence does not show a cancellation of any of the Tivey surveys, nor any change of location on the ground. I am of the opinion that as a matter of law the original location of the Tivey survey 77 would control as against the subsequent location of Texas & Pacific survey No. 1, so far as they conflict.

For reasons stated, I enter my dissent.